IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WURTH BAER SUPPLY CO., | No. 4:21-CV-01913 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| IAN STROUSE and ANDREW HOMSHER, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 10, 2023

Five months ago, this Court dismissed Defendant Ian Strouse's counterclaim for unjust enrichment. The Court explained that the facts alleged do not support the cause of action: Plaintiff Wurth Baer Supply Co.'s retention of the profits at issue is not unjust or unconscionable, and the relationship between the parties appears to be contractual in nature. That said, the Court granted Strouse leave to plead over. He did. But the amended pleadings do not remedy the prior deficiencies. If anything, the additional pleadings underscore that this dispute sounds in contract, not equity. Accordingly, Strouse's unjust enrichment counterclaim is again dismissed—this time with prejudice.

I. BACKGROUND

In the summer of 2021, Defendants Ian Strouse and Andrew Homsher resigned from their positions at Hermance and Strouse, Inc. ("Hermance"), a

family-owned business that bought, sold, and serviced woodworking machinery.[1] By all accounts, Strouse and Homsher elected to resign because Hermance was about to be acquired by Plaintiff Wurth Baer Supply Co.[2] But, according to Wurth, before Strouse and Homsher left Hermance, they engaged in a covert campaign to procure and remove from Hermance's digital network the company's internal data on customer orders (past and prospective) as well as other confidential information.[3] And after they left, Strouse and Homsher allegedly began operating a competitor company, weaponizing the stolen information to interfere with Hermance's client relationships and poach pending and prospective client orders.[4]

Based on these actions, Wurth filed a seven-count complaint against Strouse and Homsher, alleging, among other things, breach of fiduciary duty and contract, tortious interference, and violations of Pennsylvania's Uniform Trade Secrets Act and Computer Fraud and Abuse Act.[5]

In response, Strouse filed his Answer & Counterclaims.[6] Relevant here, Strouse alleged that Wurth wrongfully withheld commissions he earned and

---

[1] Doc. 1 (Compl.) ¶¶ 2–5.
[2] *Id*. ¶¶ 2, 10.
[3] *Id*. ¶ 14. Wurth details the following confidential information that Strouse and Homsher had access to: "Hermance's product designs, marketing strategies, customer lists, pricing policies, cost and pricing structure, sales and marketing initiatives and strategies, sales quotes, intellectual property, customer lists and other related information and internal operating methods and systems, customer histories and, most importantly, notes of Hermance's sales personnel regarding customer's future needs and timelines, product inquiries, product prices and potential terms of sale." *Id*. ¶ 12.
[4] Doc. 1 (Compl.) ¶¶ 45–54.
[5] *Id*.
[6] Doc. 14 (Strouse Answer & Counterclaims).

misappropriated his name and likeness by displaying on its business website videos of Strouse without his approval.[7] Accordingly, Strouse asserted counterclaims for (1) unjust enrichment,[8] (2) invasion of privacy,[9] (3) violations of his right of publicity,[10] and (4) declaratory judgment.[11]

Wurth and the Defendants then filed competing motions to dismiss.[12] In September 2022, the Court issued a Memorandum Opinion and Order largely denying the Defendants' motion but granting Wurth's motion to dismiss Strouse's counterclaims for unjust enrichment, invasion of privacy, and violations of his right of publicity.[13] The Court provided Strouse leave to plead over.[14]

Later that month, Strouse filed his Amended Answer & Counterclaims, which contains additional factual allegations supporting his unjust enrichment counterclaim (he elected not to proceed with the claims based on his rights of privacy and publicity).[15] Specifically, Strouse now alleges that in conjunction with its commission policy—which assured Strouse a percentage of the profits on all sales he negotiated and/or closed—Hermance "had a policy of paying employees commissions on sales finalized during their employment with Hermance even after

---

[7] *Id.* ¶¶ 25–38.
[8] *Id.* ¶¶ 42–49.
[9] *Id.* ¶¶ 50–54.
[10] *Id.* ¶¶ 55–59.
[11] *Id.* ¶¶ 60–81.
[12] *See* Doc. 12 (Strouse MTD); Doc. 15 (Homsher MTD); Doc. 19 (Wurth MTD Strouse's Counterclaims).
[13] Doc. 40 (MTD Mem. Op.); Doc. 41 (MTD Order).
[14] Doc. 41 (MTD Order) ¶ 2.
[15] Doc. 42 (Strouse Am. Answer & Counterclaims).

the employee left the company."[16] According to Strouse, "Wurth has either adopted this policy or instituted a similar policy of paying employees commissions on sales finalized during their employment with Wurth even after the employee leaves the company."[17]

Further, Strouse alleges that under the purchase agreement between Wurth and Hermance (whereby Wurth acquired substantially all Hermance assets), "Wurth expressly assumed the liability of certain customer transactions that Mr. Strouse cultivated and finalized prior to his departure from Hermance."[18] Strouse contends that prior to his departure, he "finalized" approximately $1.7 million in sales, from which Wurth received profits, but that Wurth "has refused to pay Mr. Strouse the commission payments to which he is entitled."[19]

In October 2022, Wurth filed a motion to dismiss Strouse's amended unjust enrichment counterclaim.[20] That motion has been fully briefed and is now ripe for consideration.[21]

---

[16] *Id.* ¶¶ 25–26, 28–29, 33.
[17] *Id.* ¶ 34.
[18] *Id.* ¶ 48.
[19] *Id.* ¶¶ 47–48, 50, 52.
[20] Doc. 48 (Wurth MTD Am. Counterclaim).
[21] *See* Doc. 49 (Wurth Br.); Doc. 52 (Strouse Opp.); Doc. 55 (Wurth Reply).

## II. LAW

Courts evaluate "a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint."[22] Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a counterclaim, in whole or in part, if the defendant fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[23] and *Ashcroft v. Iqbal*,[24] to survive a motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] The United States Court of Appeals for the Third Circuit has instructed that under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a counterclaim must take three steps: (1) take note of the elements required to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief.[26]

---

[22] *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 732 (E.D. Pa. 2020) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011)).
[23] 550 U.S. 544 (2007).
[24] 556 U.S. 662 (2009).
[25] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[26] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## III.   ANALYSIS

At issue here is the first count of Strouse's amended counterclaim: unjust enrichment.[27] According to Strouse, Wurth unjustly "retained the entirety of the profits" from sales Strouse "cultivated and finalized prior to his departure from Hermance."[28] For its part, Wurth argues that its "retention of the proceeds from the assets it purchased [from Hermance] is not unjust," and, regardless, Strouse's claim for lost wages is, at core, contractual, which "does not create a cause of action for Strouse against Wurth for unjust enrichment."[29] The Court agrees with Wurth.

To state a claim for unjust enrichment, a party must allege "(1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value."[30] For the third prong, it is well established that "the mere fact that one party benefits from the act of another is not itself sufficient to justify restitution."[31] Instead, the claimant must show "that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be

---

[27] *See* Doc. 42 (Strouse Am. Answer & Counterclaims) ¶¶ 46–54.
[28] *Id*. ¶¶ 48, 53.
[29] Doc. 49 (Wurth Br.) at 12.
[30] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 277 (3d Cir. 2007).
[31] *Norris Sales Company, Inc. v. Target Division of Diamant Boart, Inc.*, 2002 WL 31771169, at *4 (E.D. Pa. Dec. 11, 2002) (citing *Meehan v. Cheltenham Township*, 189 A.2d 593, 596 (Pa. 1963)).

unconscionable for the party to retain without compensating the provider."[32] Further, Pennsylvania courts have held that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings."[33]

Here, Strouse argues that under Hermance's commission policy, he is entitled to receive a percentage of profits realized on sales he negotiated prior to his departure.[34] As this Court sees it, there are two possible predicates for the compensation obligations underlying Strouse's claim: either (1) Wurth acquired only Hermance's assets without assuming Hermance's obligations to its sales representatives, meaning that Hermance's commission policy remains in effect; or (2) Wurth, when it acquired Hermance's assets, assumed Hermance's liability under Strouse's contract with Hermance to pay Strouse his claimed commission. But neither supports a cause of action for unjust enrichment.

The first potential predicate for the claim suffers from a litany of problems, both factual and legal. Preliminarily, in his Amended Answer & Counterclaims,

---

[32] *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (citing *Torchia on behalf of Torchia v. Torchia*, 499 A.2d 581 (Pa. Super. 1985)).
[33] *Grudkowski v. Foremost Insurance Co.*, 556 F. App'x 165, 169–70 (3d Cir. 2014) (quoting *Wilson Area School District v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)).
[34] *See* Doc. 42 (Am. Answer & Counterclaim) ¶¶ 26 ("Mr. Strouse's commission payments were distributed based upon a structure outlined in a Hermance police ('Commission Policy').")‚ 27 ("Upon information and belief, Wurth employs a similar police in connection with former Hermance employees that now work for Wurth."), 52 ("For those sales paid to Wurth, Wurth has refused to pay Mr. Strouse the commission payments to which he is entitled.").

Strouse explicitly disclaims this theory; instead, Strouse alleges that under the purchase agreement with Hermance, "Wurth expressly assumed the liability of certain customer transactions that Mr. Strouse cultivated and finalized prior to his departure from Hermance."[35] Put differently, Strouse believes that the obligation to pay former Hermance sales representatives for sales "cultivated" prior to the Wurth acquisition currently resides with Wurth, not Hermance.

To be sure, Wurth disputes this—and for good reason.[36] If, as Wurth contends, Wurth's acquisition of Hermance did not include Hermance's obligations to its current and former sales representatives, Strouse would have no basis for a claim against Wurth, whether sounding in contract or equity. Contractually, Strouse's claim for withheld compensation would be against Hermance, which issued the commission policy establishing Strouse's compensation plan and which still holds the alleged outstanding obligations to Strouse for unpaid commission. There would be no contract between Wurth and Strouse; thus, there would be no breach.

And as a matter of equity, if Wurth did contract for only Hermance's assets and declined to assume its compensation obligations, that presumably would have been reflected in the acquisition price. Because Strouse does not plead or argue

---

[35] *Id.* ¶ 48; *see also id.* ¶ 39 ("The sales Mr. Strouse finalized are not assets that Wurth purchased from Hermance, but are liabilities that Wurth assumed under the [purchase agreement].").

[36] *See* Doc. 55 (Wurth Reply) at 5 ("Wurth did not, and Strouse does not actually allege, that Wurth assumed Hermance's liability under Strouse's contract with Hermance to pay Strouse his claimed commission.").

otherwise, this Court again accepts that Wurth compensated Hermance for both the assets it acquired and the obligations it did not.[37] Accordingly, it is not "unconscionable" for Wurth to retain the proceeds from transactions it lawfully acquired.[38]

The second potential predicate for this claim (i.e., assuming that Wurth acquired Hermance's obligation to compensate Strouse for past sales he negotiated) fairs no better. Strouse's protestations notwithstanding, this framing of the claim renders it contractual in nature.[39] Indeed, Strouse has (perhaps unwittingly) admitted as much.

When dismissing the prior iteration of this counterclaim, the Court offered the following analysis:

> [I]t is unclear to the Court why Strouse believes he is entitled to commission payments on sales completed after his resignation. Strouse presents no case law establishing that companies are required, as a matter of law, to pay salesmen commission on sales consummated after the salesmen stop working. As such, the only basis for this entitlement would be in contract. And although Strouse alleges that his compensation was largely commission-based pursuant to Hermance policy, he does not plead that this policy obligates Hermance to pay former

---

[37] See Doc. 40 (MTD Mem. Op.) at 30–31.
[38] See Doc. 40 (MTD Mem. Op.) at 30–31; see also Hershey Foods, 828 F.2d at 999 (unjust enrichment requires showing "that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider").
[39] See Doc. 52 (Strouse Opp.) at 3 ("Wurth's contention that Mr. Strouse's claim is contractual in nature is fundamentally wrong.").

    employees commission on sales they negotiated prior to their departure but that were consummated after.[40]

In the Amended Answer & Counterclaims, Strouse attempts to remedy the issue by alleging that "Hermance had a policy of paying employees commissions on sales finalized during their employment with Hermance even after the employee left the company," and that "Wurth has either adopted this policy or instituted a similar policy."[41] Strouse argues that these "policies" entitle him to compensation, which Wurth is obligated to provide because "[t]he sales Mr. Strouse finalized . . . are liabilities that Wurth assumed under the [purchase agreement]."[42]

  But these allegations simply underscore Wurth's central contention: Strouse's counterclaim arises out of a contract. As Wurth notes, "[r]egardless of the label Strouse gives to the alleged [Hermance] 'policy,' whether it is a practice or some other agreement between Hermance and its employees, the alleged practice is still based upon a contract."[43] To the extent Strouse believes the Hermance commission policy requires Wurth to pay him for sales he negotiated prior to his resignation, it is because Wurth "assumed" these contractual obligations when it acquired Hermance. By the same logic, Wurth's adoption of a similar "policy" would likewise "arise out of a contract," as it "would still be a

---

[40] Doc. 40 (MTD Mem. Op.) at 30.
[41] Doc. 42 (Am. Answer & Counterclaims) ¶¶ 33–34.
[42] Id. ¶ 39.
[43] Doc. 55 (Wurth Reply) at 2.

term of an agreement to pay commission between Wurth and its employees."[44] Any obligations Wurth owes Strouse based on these "policies" would therefore be essentially contractual in nature; they cannot serve as the basis for an unjust enrichment claim.[45]

## IV.  CONCLUSION

To present a viable claim for unjust enrichment, a claimant must first show that the relationship between the parties is not governed by a contract. Strouse has failed to do so: to the extent Wurth owes Strouse commission on past sales, it is pursuant to Strouse's prior employment contract with Hermance. The dispute thus sounds in contract, not equity. Strouse's counterclaim for unjust enrichment is dismissed. Because this legal deficiency cannot be remedied with additional factual pleadings, this dismissal is with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[44] *Id.* at 3.
[45] *See Grudkowski*, 556 F. App'x at 169–70.